

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York  10278*

January 6, 2025

**BY ECF & EMAIL**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *United States v. Edward Smith*, 25 Cr. 4 (PAE)

Dear Judge Engelmayer:

  Today, January 6, 2025, a grand jury in the Southern District of New York returned an indictment charging the defendant, Edward Gene Smith ("Smith"), with receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), (b)(1), possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and distribution of controlled substances, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(2).  On September 10, 2024, Smith was arrested on a complaint (the "Complaint"), charging him with receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), (b)(1), and 2, and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2.  Since then, Smith has been released on bail.

  The Government respectfully writes to request that Smith's bail be revoked based on facts that the Government has learned through its ongoing investigation.  This includes thousands more images of child pornography, some of which depict children as young as toddlers, that have been identified on Smith's electronic devices.  Significantly, this also includes evidence that Smith has drugged and sexually assaulted at least one, but potentially more, adult female victims.  In particular, this horrific, hands-on conduct—which is associated with Count Three of the Indictment, charging Smith with distribution of a controlled substance—indicates that there are no conditions or combination of conditions that can reasonably assure the safety of the community if Smith is not remanded.

  **I.** **Factual Background**

  As described in the Complaint, in or about June 2023, Smith paid approximately $1,347.72 of Bitcoin, in three separate transactions, to obtain material from an online moniker or persona ("Producer-1"), which produces and sells, among other things, child pornography.  On or about June 26, 2024, a judicially authorized search of Smith's apartment in New York City was conducted (the "June 26 Search"), after which approximately 310 unique images of child pornography and approximately 85 unique videos of child pornography were identified on Smith's devices.  Among the images that were identified was an image that depicts a female, who is approximately 15 years old, masturbating with her legs and breasts exposed.  The name of Producer-1 is written on her breasts, and the image contains two watermarks with Producer-1's name.  In addition, among the videos that were identified was (1) one video with the file name

"9Yo Linda Takes Dad Up Ass And Sucks His Cum And Swallows.mpg," which depicts a female, who is approximately 9 years old, engaging in vaginal, anal, and oral sex with an adult man, and (2) another video with the file name "Kinderfickerparadies --- 6yo 7yo 8yo 9yo (4).avi," which depicts a female, who is approximately 5 to 6 years old, masturbating her vagina, urinating into a toilet bowl, and performing oral and vaginal sex on an adult male penis.

Smith, who was then living part-time with his wife in South Carolina and part-time at his apartment in New York City, was present at the time of the June 26 Search. Smith, who was not under arrest at the time, voluntarily agreed to be interviewed by law enforcement. During that interview, Smith admitted to purchasing material produced by Producer-1 on multiple occasions and admitted that he believed some of the individuals depicted in the materials that he had purchased from Producer-1 were minors. Smith also acknowledged that the electronic devices found in his apartment belonged to him. This includes four hard drives, one portable drive, three laptops, and two smartphones.

While not described in the Complaint, during the June 26 Search of Smith's apartment, law enforcement officers also found the following: (1) a 9mm semi-automatic Springfield Armory pistol, (2) a 9mm semi-automatic Palmetto State Armory assault rifle, (3) a 5.56X45 semi-automatic Colt assault rifle, and (4) a firearm silencer. Smith does not have a license to possess these firearms in New York City and has been charged in New York Supreme Criminal Court with (1) three counts of criminal possession of a weapon in the second degree, a loaded firearm, in violation of New York Penal Law § 265.03; (2) three counts of criminal possession of a firearm, in violation of New York Penal Law § 265.01-b(1); (3) three counts of criminal possession of a weapon in the third degree, an assault weapon, in violation of New York Penal Law § 265.02; and (4) one count of criminal possession of a weapon in the third degree, a silencer, in violation of New York Penal Law § 265.02.

At Smith's presentment on September 10, 2024, the Government and defense counsel agreed that Smith could be released on bail with the following conditions, among others: (1) Smith reside with his wife at their home in South Carolina; (2) home detention with location monitoring; (3) Smith may access only one internet-enabled device, which is subject to computer monitoring as directed by Pretrial Services; (4) Smith undergo mental health evaluation and treatment; and (5) Smith may not possess any firearms.[1]

Since Smith's presentment, the Government's investigation has been ongoing. In particular, the Government has continued its review of the ten electronic devices seized from Smith's apartment during the June 26 Search. Review of these devices has revealed that Smith was in possession of thousands of images of child pornography, many of which are extremely violent in nature and depict children as young as toddlers. In addition, review of these devices, as well as additional investigatory steps undertaken by the Government, has revealed that Smith drugged and sexually assaulted at least one adult female victim. As noted, this conduct is the basis of Count Three of the Indictment, which charges Smith with distributing a controlled substance.

---

[1] The parties also agreed that Smith's wife's devices would be subject to computer monitoring by Pretrial Services. However, Pretrial Services later requested that this condition be removed and that, instead, Smith's wife be required to password protect her devices and not permit Smith to use those devices. Smith's wife's devices may also be randomly manually checked for compliance.

Detailed below is conduct that is the subject of Count Three, along with other information that the Government has been investigating since Smith's presentment.

1. <u>The Defendant Possessed Thousands of Additional Files of Child Pornography</u>

While the Government had identified approximately 400 unique images and videos of child pornography at the time of Smith's presentment, the Government has now identified approximately 7,033 unique files containing child pornography, and the review is still ongoing. These files were maintained by Smith in an organized fashion on his electronic devices. For example, on one external hard drive, Smith kept his files of child pornography in labeled folders. One of the folders, labeled "CP-April 04," contained 4,875 files, which were further organized into subfolders labeled, for example, "Classics," "Darkfeelings," "Daughter," "Hussy," New," and "Really New." Smith's collection of child pornography contained numerous videos of victims as young as approximately three-years old.

2. <u>The Defendant Drugged and Sexually Assaulted Adults Female Victims</u>

The Government also has discovered evidence on Smith's electronic devices, namely one of his cellphones, that Smith has drugged and sexually assaulted at least one adult female victim ("Victim-1"), and potentially more. In particular, the Government has identified (1) a Telegram group (the "Telegram Group") of which Smith was a member that is dedicated to sharing images of the members' drugged and unconscious wives, girlfriends, and partners, in which Smith shared sexually explicit videos of Victim-1 after he drugged her using klonopin and alcohol; (2) WhatsApp conversations in which Smith sought to purchase and did purchase klonopin; and (3) Smith's web history, which shows that Smith entered Google searches regarding the mixture of klonopin and alcohol.

The Government also has been able to identify Victim-1, who confirmed that she had a sexual relationship with Smith. Victim-1 recalled passing out and falling asleep at Smith's apartment on one occasion in or about April 2023, which is the same month that Smith shared a sexually explicit video of Victim-1, who was unconscious in the video, with the Telegram Group. Victim-1 stated that she did not consent to Smith taking videos or photos of her while she was passed out, did not consent to Smith engaging in sexual activity with her while she was asleep, and did not consent to Smith sending sexually explicit photos or videos of her to other people.

   a. <u>The Telegram Group</u>

On or about April 18, 2023, Smith messaged the administrator of the Telegram Group ("Administrator-1") saying, "Hi, I'd love to join your sleep fan group." In response, Administrator-1 sent Smith one image and one video, each of which depicted a naked, unconscious adult female, with arms and legs spread out, and with a paper sign that read "for vip group," laid over parts of her body. Administrator-1 explained that "members of the group share their adventures on their passed out wives..gfs.. some of them make their partners drugged to use and share them." Administrator-1 further explained that, to gain membership in the Telegram Group, potential members are asked to "share 1 min video from their passed out partners with this special position (spread eagle position) with a paper that this wordls [sic] has been written over that 'for vip group.' [sic]." Administrator-1 also asked Smith, "can you share something like that?" and

Smith responded, "I have some passed out videos of my girls but not with that paper sign of course. I'll see what I can do."

On or about April 23, 2023, Smith shared a video of Victim-1, which is approximately one minute and nineteen seconds, with Administrator-1. The video depicts Victim-1, in Smith's apartment in New York City, naked, unconscious, with her arms and legs spread out, and with a paper sign on her leg that reads, "April 23, 2023, FOR VIP GROUP!! (telegram channel)." In the video, Smith zoomed in on different parts of Victim-1's body, including her genitals and face. Smith wrote that the video was "shot just now," and asked, "how's this." Administrator-1 told Smith to use the "correct position," and sent Smith a screenshot of the video of Victim-1, with red arrows indicating that Administrator-1 wanted Victim-1's arms to be more spread out, and also sent Smith a religious image of a woman crucified on a cross. Administrator-1 noted that "another name of the position is crucified girl." Smith then sent Administrator-1 another video, which is approximately one minute and three seconds, of Victim-1, naked and unconscious, with the same sign, and with her arms positioned as Administrator-1 had directed. In this video, in addition to zooming in on different parts of Victim-1's body, Smith touched and penetrated Victim-1's genitals with his fingers. Smith wrote to Administrator-1, "I don't get a chance to do this every day lol, but will be as active as I can."

In the same conversation, on the same day, on or about April 23, 2023, Administrator-1 asked Smith, "what do you use? (drug)." Smith responded, "alcohol and klonopin." Smith added "takes a while but it's always effective," and then asked, "what do others use?" Administrator-1 responded, "I use xanax" but others use "different meds …ambien-zolpidem.ketamin…and ,,,," Administrator-1 also told Smith, "i wanna know how you provide klonopin." Smith responded, "ground up and dissolved into drinks," noting it "doesn't take much." Administrator-1 clarified that he was asking "where you supply it," and Smith responded, "i have a prescription." Smith then asked Administrator-1, "how fast does xanax work, and how do you administer?" Administrator-1 responded, "45-1 hrs," "I mix crushed Xanax into a sweet drink," "and i give her while she is drunk." Smith responded, "nice," and added "klon almost doesn't have a taste so it's easy," "just have to wait longer."

On or about July 8, 2023, Smith messaged Administrator-1, "I might try to put her [*i.e.,* Victim-1] out again soon. she's a 6ft Swedish girl so it takes a lot of liquor and other stuff." Administrator-1 responded, "i want to know how many videos do you have from her." Smith responded, "no more. but i can make more when the opportunity comes." Administrator-1 then asked, "and how many from other girls?" Smith responded, "don't know I'll have to look."

On or about July 15, 2023, Smith messaged Administrator-1, "i don't have more of the Swedish girl, I've got a few passed out pics of this russian hottie," sent Administrator-1 an image of the face of an adult female, and offered to "send if you're interested." Administrator-1 responded, "its ok." Smith then said, "Swedish girl comes over every now and then. I'll see what I can do."

On or about July 19, 2023, Smith asked Administrator-1, "what do you think is most reliable method for the girls? i use clon + alcohol, but is xanax or something else better?"

Administrator-1 responded, "Its good," "Xanax is great," "There is not a single prescription for all people though."

On or about July 20, 2023, Administrator-1 messaged Smith, "i am thinking to [sic] that swedish girl." Smith responded, "I'm seeing her again next week. We'll see what happens.." On or about July 31, 2023, Administrator-1 responded to this message, asking if Smith was able to meet her. Smith responded, "yes. got her tipsy but not enough to pass out. may get another chance later this week or next." Smith then sent Administrator-1 an image of Victim-1's naked backside, bent over, and wrote "I'm getting her into bondage so may be able to tie her up completely next time," adding "if you look closely you can see her first ever butt plug."[2]

On or about October 13, 2023, Smith messaged Administrator-1, "how's the group." Administrator-1 responded, "We are doing great," and that Administrator-1 "hope[s] [Smith] ha[s] collected more videos from your sessions with passed out girls." Smith responded, "I have. And seeing swedish girl again next week :)" Administrator-1 responded, "sounds good," "if you have anything you can share."

On or about February 29, 2024, Administrator-1 messaged Smith saying, "long time no see." On or about March 15, 2024, Smith responded, "here's a pic of the swedish girl you like from a few weeks ago," "not passed out though :( " and sent an image of Victim-1, naked, with her legs spread open, and with her ankles tied by ropes to a bedframe. Administrator-1 responded, "OH," "hi there." Smith said, "hard to get enough drinks into her," to which Administrator-1 responded, "but you are an experienced guy."

    b. <u>Smith's Attempted Purchases of Klonopin on WhatsApp</u>

In early April 2023, approximately two weeks before Smith's first messages to Administrator-1 in the Telegram Group, Smith exchanged messages over WhatsApp with an individual ("Seller-1") who was trying to sell Smith drugs. Specifically, on or about April 4, 2023, Seller-1 messaged Smith saying "Hello," and then listed various drugs for Smith to purchase including, among others, "Tramadal 180 pills $329," "Ambien at $269," and "Xanax at $269." Seller-1 asked Smith, "Do you want to order now?" Smith responded, "Do you have Klonopin?" Seller-1 responded, "Yes" and asked, "How many pills do you need?" Smith responded, "Not now, but may order later."

In addition, years prior to this, in or about February 2021, Smith received a message from another individual ("Seller-2") over WhatsApp. On or about February 9, 2021, Seller-2 messaged Smith, "Hi Edward," "this is Angel from your Online Pharmacy[.] I'm checking back for the refill again on your medication." Smith responded, "How much for clonazepam [*i.e.*, the generic version of klonopin]?" Seller-2 responded, "how many pills? last time what you bought is 90 pills but we have 180 pills right now . . . for $660" Smith responded, "180 is too many. How much for 90?" Seller-2 responded, "$435" and then asked Smith to confirm the shipping address that Seller-2 had on file for Smith. Smith responded that he had moved and would think about it and get back to Seller-2. On or about March 4, 2021, Seller-2 sent Smith a tracking number for a delivery that had been delivered to Smith's apartment in New York City the previous day. Smith responded,

---

[2] During the June 26 Search, numerous ropes and other sex toys were found in Smith's apartment, including a rope that was tied to Smith's bed.

"Received. Thank you!" Messages in which Smith told Seller-2 that he wanted to make a purchase appear to have been deleted and were not able to be recovered.

   c. Smith's Web History

The Government's review of Smith's web history indicates that Smith was researching the combination of klonopin and alcohol as recently as May 2024. Smith's browser history indicates on or about May 29, 2024, Smith used Google to search, "clonzapeam and alcohol," and went to sites with articles titled, "Dangers of Mixing Alcohol and Klonopin (Clonazepam)" and "What Happens When you Mix Klonopin (Clonazepam) and Alcohol?"

## II.    Applicable Legal Standard

Because the Indictment charges Smith with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), considerations of release and detention pending trial are governed by 18 U.S.C. § 3142(e)(3)(E). Accordingly, there is a rebuttable presumption that "no condition of combination of conditions will reasonably assure" the appearance of the defendant and the safety of the community. *Id.* In such a case, the defendant bears the burden of production and must present evidence that he does not pose a danger to the community or a risk of flight. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant can successfully rebut the presumption in favor of detention, the presumption does not disappear—rather, it "remains a factor to be considered among those weighed by the district court." *Id.* Ultimately, the Government always bears the burden of persuasion as to the necessity of detention. *Id.*

In considering the defendant's application for bail, the Court must consider four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is . . . involves . . . a minor victim or a controlled substance. . .; (2) the weight of the
> evidence against the person; (3) the history and characteristics of the person, including-- (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III.    Discussion

As discussed above, based on Smith's online activity, it appears that Smith engaged in this horrific hands-on conduct on a repeated basis over the course of many years. In February 2021, Smith purchased a *refill* of klonopin from an online vendor on WhatsApp—indicating that this was not even Smith's first purchase of the controlled substance. In April 2023, Smith sought out

a Telegram Group specifically dedicated to sharing photographs and videos of naked and unconscious women in sexual positions. And when Smith first messaged Administrator-1 of that group on or about April 18, 2023, Smith stated that he already had "some passed out videos of [his] girls." On or about April 23, 2023, Smith sent the Telegram Group a video of himself sexually assaulting Victim-1, who was naked and unconscious, and said that he had shot the video "just now." On or about October 13, 2023, when Administrator-1 asked Smith whether he had "collected more videos from [his] sessions with passed out girls," Smith answered, "I have"—suggesting that Smith continued drugging and recording women between April 23, 2023 and October 13, 2023. What's more, Adminstrator-1 referred to Smith as "an experienced guy," when discussing Smith's efforts to intoxicate Victim-1 so that he could take and share more photographs and videos of her passed out and naked. Furthermore, Smith's message from March 15, 2024, in which he told Administrator-1 that he was sharing a picture of "the swedish girl you like from a few weeks ago," indicates that Smith likely took and shared additional videos that have since been deleted. Finally, there is no reason to believe Smith's misconduct ever stopped. Just a few weeks before Smith's electronic devices were seized in the June 26 Search, Smith was Googling the effects of combining klonopin and alcohol, suggesting that he was still engaged in this practice. Moreover, even after the June 24 Search, Smith continued his relationship with Victim-1 and saw her in person as recently as two weeks before his arrest on or about September 10, 2024.

       The nature and lengthy timeframe of Smith's disturbing hands-on misconduct, combined with the other evidence in this case—namely, the approximately 7,033 unique files of child pornography, some of which depict victims as young as toddlers, found on Smith's devices, as well as Smith's unlawful possession of two assault rifles, a pistol, and a silencer—individually and taken together make clear that Smith is a clear danger to the community and there is no condition or combination of conditions of release that can reasonably assure the safety of the community. If Smith remains on home detention in South Carolina, there is a substantial risk that he would engage in the same type of dangerous, abusive conduct in the house where his stepdaughters, who are in their 20s, also sometimes visit. Indeed, so much of Smith's criminal conduct can be continued through simply accessing the internet, including obtaining child pornography and obtaining medication for the purpose of incapacitating women victims.[3] In particular, Smith has demonstrated that he is an active participant in a whole online network of individuals all dedicated to taking and sharing photographs and videos of naked and incapacitated women. Accordingly, Smith could continue to assist any number of these individuals in their assault and abuse of women, including by assisting others in obtaining medications like klonopin through his contacts.

---

[3] *See, e.g., United States v. Reiner*, 468 F. Supp. 2d 393 (E.D.N.Y. 2006) ("Even if the Court were to order electronic monitoring and home detention of the defendant pending trial, that condition would not adequately address his ability to access phones or computers in his home which could be used for the types of illicit activities described above [possession of child pornography] even if steps were taken to try to prevent those items from being present or available in the house.")

Nor is it a solution for Smith to instead reside by himself, where potential victims could visit him, undetected by Pretrial Services. Smith's practice of drugging and sexually assaulting his sexual partners is particularly nefarious and difficult to detect: He renders his unsuspecting victims unconscious and thus unaware of and unable to report the abuse. Smith should be detained.

Respectfully submitted,

EDWARD Y. KIM
Acting United States Attorney

By: /s/ Remy Grosbard
Remy Grosbard
Assistant United States Attorney
(212) 637-2446

cc: Todd Spodek, Esq.