UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

EDWARD GENE SMITH,

Defendant.

S2 25 Cr. 4 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Edward Gene Smith is charged in Superseding Indictment S2 25 Cr. 4 (PAE) with receiving and possessing child pornography; distributing a controlled substance (clonazepam) to an adult woman without her knowledge and with the intent to engage in nonconsensual sexual acts with her; sex trafficking another adult woman by force, fraud, or coercion, and inducing her to travel to engage in unlawful sexual activity; and falsifying a document with the intent to obstruct a federal investigation. His trial is scheduled to begin on March 9, 2026.

This decision resolves a motion by the Government to preclude the proposed expert testimony of Dr. Laurie Sperry, who holds herself out as an expert in the field of autism forensics and forensic psychology. On October 2, 2025, the Court granted an earlier motion by the Government to exclude, in its entirety, Dr. Sperry's proposed testimony. As her testimony was then proposed, Dr. Sperry would have opined that Smith has Autism Spectrum Disorder ("ASD"), and that this condition might have affected Smith's decision to participate in, and his statements during, interviews by federal agents during the execution of a search warrant of his apartment.

1

After that decision, the grand jury returned Superseding Indictment S1 25 Cr. 4 (PAE), which added the count that charges Smith with falsifying a document with the intent to obstruct a federal investigation. The defense thereafter proposed to call Dr. Sperry to give expert testimony tied to that obstruction count. In brief, Dr. Sperry proposes to opine that Smith's ASD made him unable to appreciate that the conduct underlying that count—preparing a false statement and offering to pay a witness to attest in writing to its truth—was wrongful and obstructive.

The Government has moved to preclude that testimony its entirety. For the reasons that follow, the Court grants the Government's motion.

**I.     Relevant Background**

The Court incorporates by reference the background set out in its prior decisions in this case. These include an April 16, 2025 decision denying Smith's motion to suppress statements he made while interrogated during the June 26, 2024 search of his apartment pursuant to a court-authorized search warrant, *see* Dkt. 66 at 1–9; and the Court's decisions of October 2 and November 26, 2025, resolving Government motions to preclude proposed testimony by two defense experts, Dr. Sperry, Dkt. 108 at 2–3, and forensic technologist Jeffrey Fischbach, Dkt. 147 at 2–6.

**A.     Dr. Sperry's Initial Disclosure and Report**

On August 14, 2025, the defense provided the Government with an expert disclosure as to Dr. Sperry. Dkt. 100, Ex. A ("Disclosure"). It stated that the defense would call Dr. Sperry as a rebuttal witness, in the event the Government elicited testimony about Smith's statements and behavior in interviews with the Federal Bureau of Investigation ("FBI") during the execution of a search warrant of his apartment on June 26, 2024. *Id.* at 1. That testimony, according to the Disclosure, would "aid the trier of fact in comprehending how Mr. Smith's diagnosis of [ASD]

2

might have influenced his suggestibility, comprehension, and responsiveness during the interrogation." *Id.*

The defense also provided an accompanying 38-page report with various attachments. Dkt. 100, Ex. B, at 1–43 ("Report"); Dkt. 100, Ex. B, at 44–166 ("Att."). The Report set out Dr. Sperry's credentials, on which an attached *curriculum vitae* ("CV") elaborated. Those materials stated that Dr. Sperry has a Ph.D. (in child development and family studies from the University of North Carolina Chapel Hill, Att. at 108) and a degree in forensic psychology and criminal investigations (from the University of Liverpool, *id.*); that she has been an assistant clinical faculty member in Yale University's psychology department "as part of the Yale Autism Forensics Team" and a clinical faculty member at Stanford University's psychiatry and behavioral health department; that she is a board-certified behavioral analyst; that she is in private practice; that she has published peer-reviewed articles and served as a panelist at psychiatry and law conferences; and that she has been qualified as an expert in "more than 70 cases." Report at 3.

The Report then set out the opinions Dr. Sperry proposed to give, which covered a range of topics. These included: Smith's family and personal history; results from ASD-related tests administered to Smith by Dr. Sperry; possible reasons for Smith's middle-age ASD diagnosis; Smith's tendency to hoard; the FBI interviews of Smith; the disinclination of autistic people to lie when interviewed; and the overall treatment of autistic people in the criminal justice system.

### B. The Government's First Motion to Preclude Dr. Sperry's Testimony

On August 28, 2025, the Government moved to preclude Dr. Sperry's testimony in its entirety. Dkt. 96.

On October 2, 2025, the Court granted that motion. Dkt. 108 ("Sperry Decision"). The Court analyzed Dr. Sperry's testimony under Federal Rule of Evidence 702; the Insanity Defense Reform Act of 1984 ("IDRA"), 18 U.S.C. § 17; other Federal Rules of Evidence (Fed. R. Evid. 401, 403, 802); and Federal Rule of Criminal Procedure 16(b)(1)(C). The Court found that each area of Dr. Sperry's proposed testimony was incompatible with one or more of these authorities.

Salient here, the Court found, based on the credentials Dr. Sperry disclosed, that she was not qualified, under Rule 702, to diagnose an adult with ASD. Sperry Decision at 12–16. As to the IDRA, the Court found that "mental-health evidence offered to demonstrate the falsity of an admission or confession is, conceptually, compatible with the IDRA." *Id.* at 35. But, because Dr. Sperry's opinions were not "directly linked" to that purpose (*i.e.*, they did not "undermine the veracity of Smith's admissions to the FBI") and did not have any other purpose permitted by that statute, her testimony violated the IDRA. *Id.* at 36.

C.   **The Superseding Indictments**

On September 30, 2025, a grand jury returned Superseding Indictment S1 25 Cr. 4 (PAE). Dkt. 106 ("S1 Indictment"). Salient here, it added Count Four, which charged Smith with falsifying a document with the intent to obstruct a federal investigation, in violation of 18 U.S.C. §§ 1519 and 2. *Id.* at 2–3. That count alleges that Smith created, and paid Victim-1, an adult woman, to sign, a document falsely representing that Victim-1 had access to his residence and computer. *Id.* An evident purpose of this false statement was to support a defense that Victim-1 might have been the person who had sought out and received the child pornography on Smith's computer.

4

On December 23, 2025, a grand jury returned Superseding Indictment S2 25 Cr. 4 (PAE), the operative indictment today. Dkt. 170 (the "S2 Indictment"). The S2 Indictment added new counts, but did not modify the obstruction count, which is now Count Six (the "obstruction count" or "Count Six").[1] *Id.* at 6. In its background narrative, the S2 Indictment states that Smith "paid Victim-1 thousands of dollars to sign" the falsified document. *Id.* at 2.

### D.    Dr. Sperry's Declaration

On November 24, 2025, the defense filed a letter stating its intent to offer expert testimony by Dr. Sperry keyed to what is now Count Six. Dkt. 145. The letter stated:

> The Government has advised defense counsel that it has discovered evidence that Mr. Smith made financial payments to various witnesses, including the witness related to [Count Six], which the Government believes is evidence that Mr. Smith knew that the statements he was soliciting from these various witnesses were false. . . . Dr. Sperry would be called to rebut that argument and show that, because of Mr. Smith's neuro-divergencies that she identified in her previously disclosed report, Mr. Smith's payments to these various witnesses [are] not evidence of consciousness of guilt as to that charge.

*Id.*

At a conference that day, the Court questioned defense counsel about the scope of Dr. Sperry's anticipated expert testimony. Defense counsel stated that Dr. Sperry would opine that, based on Smith's "transactional relationship with a prostitute," his payments to Victim-1 related to Count Six "were not evidence of illegality," "consciousness of guilt," or "intent to subvert." 11/24/25 Tr. at 7–8. The Court set a schedule for the defense's disclosure as to Dr. Sperry and an anticipated motion to preclude by the Government. Dkt. 146.[2]

---

[1] The two new counts both involve a victim identified as "Victim-2." These are Count Two, which charges sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a) and (b)(1), and Count Three, which charges inducement to travel to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(a). S2 Indictment at 3–4.

[2] That schedule was later revised in response to extension requests from the defense and the Government. Dkt. 154.

On December 10, 2025, the defense filed Dr. Sperry's declaration. Dkt. 152 ("Sperry Decl."). It first describes the scope of Dr. Sperry's assignment. She states that defense counsel asked her "to opine on an autistic person's ability to understand how other people might view their behavior due to inherent perspective taking deficits." *Id.* at 1. With that task in mind, Dr. Sperry "agreed to review the assessments" that she had earlier administered to Smith in connection with the Disclosure and Report, as well as "the relevant literature." *Id.*

Dr. Sperry's declaration then summarizes studies about the link between ASD and deficits in "theory of mind" and "perspective taking." *Id.* at 1–2. She states that, because autistic people have limited ability to "understand that other people's desires and beliefs are different," they have difficulty "predict[ing] the consequences of their actions and how others will view their actions." *Id.* at 2. She states that autistic people have "lower reasoning abilities" than neurotypical people, which causes them to "misread[] another's reactions to their behavior," and fail to consider "potential harmfulness when engaging in illegal activity or confronted with wrongful situations." *Id.* As a result, she states, an individual with ASD may "behav[e] inappropriately and engag[e] in criminal acts against the other person," such as "sharing inappropriate sexual images or making uninvited sexual advances." *Id.*

Dr. Sperry next recaps several assessments of Smith that she and another doctor had made in the Report. Based on these, she finds that "Smith meets criteria for an Autism Spectrum Disorder." *Id.* She states that Smith has "[p]oor social functioning," "deficiencies in reciprocal social behavior," "substantial difficulty working out the intentions of others," and "extreme difficulties flexibly adapting to changes in his environment." *Id.* at 3. She proposes to testify to the following opinions based on these findings:

- ***Smith did not appreciate how others would view his obstructionist conduct or that such conduct was wrong.*** "Poor social cognition means it would have been extremely difficult, if not impossible for [Smith] to consider how other people

6

might view his behavior as potentially obstructionist." And: "Absent a law degree and without explicit rules around not communicating with others involved in his case, Mr. Smith would not necessarily intuit that this was wrong or that his actions could be viewed by others as obstructionist."

- ***Smith's efforts to resolve his criminal case are reflective of his ASD.*** "[Smith's] criminal case has become his deep interest. Thus, his efforts to resolve it have come to reflect the restricted and repetitive behaviors inherent in a diagnosis of autism."

- ***Smith made an error in social judgment.*** "Mr. Smith's impairments were highlighted in terms of his cognitive rigidity, or tendency to get stuck on one way to solve a problem, his inability to view how others view[] his behavior and how his behavior impacted others. This is an error of social judgment, not criminal judgment."

*Id.*

### E.   Procedural History of this Motion

On December 11, 2025, the Government filed a letter regarding Dr. Sperry's declaration. Dkt. 153. It argued that the declaration was flawed because it: (1) seeks to supplement Dr. Sperry's prior Disclosure and Report, which the Court had precluded in the Sperry Decision; (2) addresses topics unrelated to the obstruction count—the one count as to which the Court had authorized a supplemental expert disclosure from Dr. Sperry; and (3) does not address the narrow issue—Smith's *payment* for the statement by Victim-1—that defense counsel had stated would be the subject of Dr. Sperry's testimony. *Id.* at 1–2. Based on these flaws, the Government asked the Court to preclude, without further briefing, Dr. Sperry's testimony. *Id.* at 2. In the alternative, the Government asked the Court to set an amended briefing schedule for its motion to preclude. *Id.*

On December 12, 2025, the Court set a revised briefing schedule. Dkt. 154. The Court noted that "[t]he Government's critique to the effect that Dr. Sperry's report significantly exceeds the limited bounds authorized by the Court at the November 24, 2025 conference appears merited." *Id.* at 2. Accordingly, the Court stated that it "expects any motion to preclude

7

Dr. Sperry's proposed testimony will focus tightly on her opinions specific to the conduct charged in [Count Six]." *Id.* The Court also stated that it "does not require a reply" by the Government in support of its motion. *Id.* at 3.

On December 18, 2025, the Government filed its second motion to preclude Dr. Sperry's testimony. Dkt. 160 ("Mot."). On December 24, 2025, the defense opposed. Dkt. 168 ("Opp'n").

## II.    Governing Legal Principles

***Insanity Defense Reform Act***:  The IDRA limits the mental-health evidence a defendant can offer in a federal criminal trial. It provides, in relevant part:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a). The IDRA (1) "eliminat[ed] . . . any form of legal excuse based on a defendant's lack of volitional control," (2) "eliminat[ed] . . . affirmative defenses such as 'diminished capacity,' 'diminished responsibility,' 'mitigation,' and 'justification,'" (3) "limit[ed] . . . the use of expert psychological testimony on ultimate legal issues," (4) "alter[ed] . . . the burden of proof to require the defendant to prove the affirmative defense of insanity by clear and convincing evidence," and (5) "creat[ed] . . . a special verdict of 'not guilty by reason of insanity,' which triggers federal civil commitment proceedings." *United States v. Jones*, No. 16 Cr. 553, 2018 WL 1115778, at *4 (S.D.N.Y. Feb. 27, 2018) (citation omitted).

***Federal Rules of Evidence***: Rule 702 governs the admissibility of expert testimony in federal court. Courts have distilled Rule 702 to require the proponent to show, by a preponderance, that "(1) the expert is qualified; (2) the proposed opinion is based on reliable data

8

and methodology; and (3) the proposed testimony would be helpful to the trier of fact." *Nike, Inc. v. StockX LLC*, No. 22 Civ. 983, 2024 WL 3361411, at *2 (S.D.N.Y. July 10, 2024); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542, 2025 WL 354671, at *2 (S.D.N.Y. Jan. 30, 2025). In determining whether the proponent has made that showing, the district court serves a "gatekeeping role," which involves "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

### III. Discussion

The Government argues that Dr. Sperry's testimony is inadmissible under the IDRA and Rule 702. The Court considers each in turn.

#### A. The IDRA

The IDRA permits defendants to offer mental-health evidence for limited purposes. They may pursue the affirmative defense of insanity—although they must establish such by "clear and convincing evidence." 18 U.S.C. § 17(a)–(b). The Second Circuit has also held that the IDRA "does not preclude a defendant from submitting mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime." *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006). And this Court, in the Sperry Decision, held that "mental-health evidence offered to demonstrate the falsity of an admission or confession is, conceptually, compatible with the IDRA." Sperry Decision at 35.

The Government argues that Dr. Sperry's proposed testimony violates the IDRA because it has "nothing to do with [Smith's] ability to form the intent required to commit the crime of obstruction of justice." Mot. at 14. As relevant here, 18 U.S.C. § 1519—the charged statute— prohibits "knowingly . . . falsif[ying] . . . any record, document, or tangible object with the intent

9

to impede, obstruct, or influence" a federal investigation. The defense responds that Dr. Sperry "will inform the jury about [Smith's] condition and how he evaluates circumstances . . . so that the juror[s] may make the determination as to the elements of knowledge and intent" in Count Six. Opp'n at 10.

The Government is correct. Dr. Sperry's proposed testimony about Smith's ASD would not tend to refute that Smith "knowingly" falsified records with the "intent to impede an investigation." *United States v. Scott*, 979 F.3d 986, 992–93 (2d Cir. 2020) (citing 18 U.S.C. § 1519).

Dr. Sperry's opinions instead focus on how Smith's ASD made him unable to anticipate or appreciate how *others* would perceive his actions. *See, e.g.*, Sperry Decl. at 3 ("Poor social cognition means it would have been extremely difficult, if not impossible for him to consider how other people might view his behavior as potentially obstructionist."); *id.* ("Smith would not necessarily intuit that . . . his actions could be viewed by others as obstructionist."); *id.* ("This is an error in social judgment, not criminal judgment."). But whether Smith appreciated how his outreach to Victim-1 would be viewed in the moment by her (or later, by a prosecutor or grand jury) does not say anything about the intent element of Count Six—whether Smith, by inducing Victim-1 to falsely attest in writing that she had access to Smith's computer, intended to obstruct justice. And the other points on which Dr. Sperry proposes to testify—essentially, why Smith's obstructive behavior reflects, or is consistent with, an ASD diagnosis—are likewise irrelevant to whether he acted with that intent.[3] The defense thus has not carried its burden of

---

[3] Dr. Sperry opines, for example, that Smith's "criminal case has become his deep interest" and that his "efforts to resolve it have come to reflect the restricted and repetitive behaviors inherent in autism." Sperry Decl. at 3. But whether Smith's ASD made him "especially vulnerable to committing this sort of offense . . . is irrelevant because it has no tendency to make the existence of any element of the relevant offense[]"—including his intent—"less likely." *United States v.*

"demonstrat[ing] clearly, in advance of trial, that there is a direct link between such evidence and the specific *mens rea* that the Government must prove." *United States v. Sabir*, No. 5 Cr. 673, 2007 WL 1373184, at *5 (S.D.N.Y. May 10, 2007).

The defense does not contend that there is a purpose, apart from ostensibly rebutting the obstruction count's *mens rea*, for which this mental health testimony could properly be received (*e.g.*, the defense does not argue the affirmative defense of insanity). The admission of Dr. Sperry's testimony would "therefore serve as a backdoor means to put before the jury inadmissible evidence about a defendant's mental health evocative of the justification and excuse defenses that the IDRA was enacted to eliminate." Sperry Decision at 38 (citation omitted). Accordingly, her testimony is barred by the IDRA. *See, e.g., United States v. Ray*, 583 F. Supp. 3d 518, 539 (S.D.N.Y. 2022) (precluding testimony that "lack[ed] the 'direct link' to the *mens rea* required to render it permissible mental-health evidence under the IDRA"); *Jones*, 2018 WL 1115778, at *6 (same where defendant did not "present[] a direct link between his alleged

---

*Dzionara-Norsen*, 2024 WL 191803, at *4 (2d Cir. Jan. 18, 2024) (summary order) (citation omitted) (affirming preclusion of testimony that individuals with Asperger's syndrome are "especially vulnerable" to commit child pornography offenses).

Dr. Sperry separately opines that "[a]bsent a law degree and without explicit rules around not communicating with others involved in his case, Mr. Smith would not necessarily intuit that [his conduct] was wrong." Sperry Decl. at 3. It is foundational, however, that, to be found guilty, a defendant generally need not know the specific legal rules governing his conduct. *See, e.g., Elonis v. United States*, 575 U.S. 723, 734–35 (2015) ("The familiar maxim 'ignorance of the law is no excuse' typically holds true."). And Dr. Sperry's testimony does not tend to negate Smith's ability to form the intent required by the obstruction statute. The second element of 18 U.S.C. § 1519—"knowingly"—merely requires that the defendant have acted voluntarily and intentionally, not that he knew his actions were unlawful. *See, e.g., United States v. George*, 386 F.3d 383, 389 n.6 (2d Cir. 2004). And the third element—"intent to impede, obstruct, or influence the investigation"—merely requires that the defendant's aim was to obstruct an investigation. Dr. Sperry's opinion notably does not opine that Smith's ASD prevented him from appreciating (1) that the statement to which he paid Victim-1 to attest was factually false, or (2) that, if credited by a jury, this false statement would tend to obstruct his prosecution.

11

delusional disorder and a lack of intent"); *United States v. Agnello*, 158 F. Supp. 2d 285, 287 (E.D.N.Y. 2001) (same where defendant "failed to establish the necessary link or fit between his alleged mental defect or disease and the intent required of any of the crimes charged against him").

**B.      Rule 702**

The Government separately argues that Dr. Sperry's testimony fails Rule 702 because she is not qualified to diagnose Smith with ASD, her methodology is flawed, and her proposed opinions are irrelevant.

**1.      Qualifications**

"Whether a witness is qualified as an expert is a threshold question that precedes the court's relevance and reliability inquiries." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 636 (S.D.N.Y. 2016) (quoting *Loyd v. United States*, No. 8 Civ. 9016, 2011 WL 1327043, at *4 (S.D.N.Y. Mar. 31, 2011)), *aff'd*, 720 F. App'x 24 (2d Cir. 2017). In evaluating a proposed expert's qualifications, "courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

The Government notes that, notwithstanding the Court's earlier finding that the defense had *not* established Dr. Sperry's qualifications to diagnose an adult such as Smith with ASD, Dr. Sperry's declaration, which again relates to Smith's ASD, "does not include any additional credentials or qualifications for Dr. Sperry" to make that diagnosis. Sperry Mot. at 7–8 (citing Sperry Decision at 14–16). In response, the defense recapitulates Dr. Sperry's qualifications, as she set them out in the Disclosure and Report preceding the Court's initial decision. The defense argues that these credentials "directly contradict[] the Government['s] complaint that this Court

12

has insufficient information about Dr. Sperry's competence to diagnose Mr. Smith with ASD." Opp'n at 9 ("It is, in fact, *what she does professionally.*" (emphasis in original)).

The defense's argument—which, strikingly, ignores the Sperry Decision—fails.

The central premise of Dr. Sperry's proposed expert testimony, as before, is that Smith has ASD. Because Smith is autistic, Dr. Sperry opines, he was unable to appreciate "how other people might view his behavior as potentially obstructionist" or that his behavior was "wrong," and he got "stuck on one way to solve a problem." Sperry Decl. at 3. On the record before the Court, no treating physician or other qualified person has heretofore diagnosed Smith with ASD. For Dr. Sperry's testimony to be received under Rule 702, the Court would therefore have to find her qualified to diagnose Smith with ASD.

The Court addressed this precise issue at considerable length in the Sperry Decision. *See* Sperry Decision at 12 (considering "whether Dr. Sperry's education, research, certifications, work experience, and prior testimony qualify her to render an ASD diagnosis as to Smith"). The Court concluded: "Based on Dr. Sperry's record as developed in this case, the Court cannot affirmatively find that she is qualified to diagnose Smith, an adult, with ASD." *Id.* at 15. The Court acknowledged that Dr. Sperry "has extensive experience studying and researching ASD," and supporting children with ASD. *Id.* at 12. But it found that "[t]he materials supplied by Dr. Sperry do not reveal meaningful experience diagnosing ASD in adult subjects." *Id.* at 14. The Court found "especially unrevealing" the "shorthand summaries" of Dr. Sperry's professional experiences, and the cursory account of her prior testimony, which did not "specify the propositions to which she testified in these cases, or whether she provided in-court testimony." *Id.* at 14–15. And, because Dr. Sperry's testimony was improper for multiple other reasons, the

13

Court declined to convene an evidentiary hearing to flesh out her diagnostic qualifications. *Id.* at 16.

Notwithstanding the Court's having chronicled the deficiencies in Dr. Sperry's qualifications, the defense has not done anything to amplify on these in Dr. Sperry's declaration. It has not come forward with any further information related to her professional experiences, certifications, or prior testimony. That omission is telling, especially because the Court's initial decision effectively supplied the defense with a checklist of information that—had it existed—could have fortified Dr. Sperry's qualifications. *See id.* at 15 (noting that Dr. Sperry's description of her work as a Yale University assistant clinical faculty member "does not state what this work entailed and whether it involved diagnosing adult patients with ASD"); *id.* (noting that Dr. Sperry's description of her University of North Carolina School of Medicine postdoctoral fellowship "does not reveal the types of persons diagnosed (including whether they were adults), or whether and to what extent [Dr. Sperry] participated in the diagnoses"); *id.* (noting that Dr. Sperry's description of her prior testimony "does not cite cases in which her court testimony consisted of diagnosing an adult with ASD"—a lapse that was "particularly striking because Smith was on notice of that specific challenge to Dr. Sperry's qualifications").

Dr. Sperry's silence on these points in her latest declaration suggests that nothing more could be said to buttress her qualifications to render an adult ASD diagnosis. In all events, with Dr. Sperry's credentials no further developed, the Court remains unable to conclude that she is qualified to diagnose Smith with ASD. Accordingly, Dr. Sperry's proposed testimony fails the qualification requirement of Rule 702. *See, e.g., In re Fosamax Prods. Liab. Litig.*, No. 6 Civ. 7631, 2009 WL 4042769, at *7 (S.D.N.Y. Nov. 23, 2009) (precluding testimony where "limited record" revealed that expert "lacks the 'specialized knowledge'" in relevant area), *aff'd sub*

*nom. Flemings v. Merck & Co.*, 399 F. App'x 672 (2d Cir. 2010); *Dzionara-Norsen*, 2024 WL 191803, at *4 (affirming preclusion of proposed autism expert based on "limited educational or practical experience"); *see also LVL XIII Brands, Inc.*, 209 F. Supp. 3d at 636 (although expert's experience "may qualify him as an expert in certain areas," proponent "has not shown how such expertise qualifies him to testify as to the central . . . issue addressed in his report").

### 2. Other Rule 702 Requirements

Because the Court has found Dr. Sperry unqualified to testify to the opinions in her declaration, analysis of the remaining *Daubert* factors "seems almost superfluous." *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 360 (2d Cir. 2004). Nevertheless, the Court notes that Dr. Sperry's declaration appears deficient in at least two other respects.

First, Dr. Sperry has not "reliably applied" a methodology "to the facts of the case." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016) (quoting Fed. R. Evid. 702). Dr. Sperry's analysis consisted of reviewing her previous assessments of Smith with a focus on "an autistic person's ability to understand how other people might view their behavior due to inherent perspective taking deficits." Sperry Decl. at 1. She does not appear to have considered any facts or materials related to the conduct underlying Count Six. These include the allegations in the superseding indictments bearing on that count, the falsified statement of support from Victim-1 on which that count rests, and the factual allegation that Smith offered to pay Victim-1 to sign that statement. *See* Mot. at 10–11. Dr. Sperry also does not claim to have interviewed Smith about such conduct. *Id.* On the record before the Court, she has not engaged with the facts relevant to Count Six at all. Accordingly, the opinion to which she proposes to testify — that Smith would have struggled to appreciate the wrongfulness of such conduct or how it would

15

be perceived by others—cannot be said to "reliably flow from the facts available." *Atl. Specialty Ins. v. AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 285 (S.D.N.Y. 2013) (citation omitted).

Second, Dr. Sperry's analysis would not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The defense contends that Dr. Sperry's testimony is relevant because "her explanation of the 'theory of the mind deficits' goes to the heart of the intent requirement of the obstruction charge." Opp'n at 10. But, as described above, Dr. Sperry's opinions do not negate the knowledge and intent elements of Count Six, and the defense does not point to any other purpose for which her testimony could properly be received. Although her proposed testimony might contextualize Smith's conduct by showing that this aspect of his behavior was consistent with his ASD diagnosis, that does not have any bearing on his guilt or innocence on the obstruction count. Dr. Sperry's opinions are thus irrelevant. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (citation omitted)).

Accordingly, for multiple reasons, Dr. Sperry's testimony is inadmissible under Rule 702.[4]

---

[4] The Government argues that Dr. Sperry's testimony independently requires preclusion under Federal Rule of Evidence 403 because the heart of that testimony, Smith's ASD, lacks probative value on any element of any count and is "highly likely to confuse or distract the jury and unfairly prejudice the Government." Mot. at 16. That argument is meritorious, substantially for the reasons offered by the Government. *See Sabir*, 2007 WL 1373184, at *9 (excluding evidence under Rule 403 because it "would suggest that the jurors should have sympathy" for defendant, and thereby "distract the jury's attention from considering the evidence as it applies to the elements of the crimes charged"); *Agnello*, 158 F. Supp. 2d at 289 (precluding psychiatric testimony that "could easily mislead the jury into thinking that such evidence ameliorates or excuses the offense"). Because Dr. Sperry's testimony requires exclusion on the other two grounds, the Court does not further elaborate on this point.

## CONCLUSION

For the foregoing reasons, the Court grants the Government's second motion to preclude the testimony of Dr. Sperry. The Clerk of Court is respectfully directed to terminate the motion pending at docket 160.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: January 16, 2026
      New York, New York